1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NM LLC, et al., | Case No. 3:24-cv-05181-TMC |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| SHERRI KELLER, et al., | |
| Defendants. | |

## I.    INTRODUCTION

The Plaintiffs in this case bring civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, based on Defendants' actions in ongoing state court litigation arising from a dispute over the parties' adjacent parcels of real property. *See* Dkt. 52 ¶¶ 5–15. Before the Court is Defendants Sherri Keller, Terry Ellson, Keller Ellson Partnership, and Keller Ellson's motion to dismiss (Dkt. 83). Having reviewed the pleadings, the parties' briefing, and the balance of the record, the Court GRANTS the motion and DISMISSES all claims.

## II.    BACKGROUND

The following facts are based on the allegations in Plaintiffs' amended complaint (Dkt. 52). Plaintiffs are NM, LLC, and its managing members and governors, Steven John

Nikolich and Marcia A Nikolich. Dkt. 52 at 1. In 2019, NM, LLC acquired real property in Centralia, Washington. *Id.* ¶ 11. Plaintiffs sought to develop the property by constructing multi-family residential buildings for sale or rent. *Id.* ¶ 12. On October 15, 2021, Sherri Keller, who owns the adjacent property, filed a complaint in Lewis County Superior Court (*Sherri L. Keller, v. Steven J. Nikolich and Marcia A. Nikolich as individuals and as governors of NM LLC and NM LLC, a Washington State Limited Liability Company UBI No. 604-399-129*, Lewis County Superior Court, Case No.: 21-2-00573-21, "*Keller*"), alleging that Plaintiffs in this case wrongfully removed 150 cubic yards from her property by bulldozer to create a boat ramp. *Id.* ¶¶ 13–14.

Plaintiffs assert that Sherri Keller and Terry Ellson knew the 150 cubic yards was part of NM, LLC's property, and pretextually brought *Keller* in an attempt to acquire that property. *Id.* ¶¶ 14A, 14D, 14E. Specifically, they allege that "commencing in April 2021, Keller and Ellson consummated a criminally and feloniously conspiratorial agreement, mutually coordinated and acting in a joint collaborative, concerted, conduct, intended, designed, implemented, and executed to criminally, feloniously, and wrongfully acquire the particular real property interests owned in fee simple absolute by NM, LLC." *Id.* As part of that state court action, Keller filed and recorded a *lis pendens* notice, which Plaintiffs allege clouds the title to their property. *Id.* ¶ 15. They also allege that Defendants "facilitated and furthered their conspiratorial activities by and through by Ellson filing and prosecuting a Petition for Protection Order, against plaintiff Steven J. Nikolich in Lewis County Superior Court, filed on 16 March 2023" (*Terry Lee Ellson v. Steven John Nikolich*, Lewis County Superior Court, Case No.: 23-2-0023521, "*Ellson*"). *See id.* ¶ 14I. And they allege that Keller and Elson attempted to persuade agents of the Washington Department of Fish and Wildlife to initiate administrative proceedings or refer the case for criminal prosecution. *Id.* ¶¶ 14L–14N.

1

2

Plaintiffs bring seven RICO claims based on the *Keller* and *Ellson* litigation. They allege

3

that "that in conducting the business and affairs of the RICO enterprises, and in committing the

4

acts, omissions, misrepresentations, and breaches referred to herein between October 2021, and

5

continuing up through and including the initiation of these proceedings, defendants' activities

6

were consistently intended to tortiously interfere with both plaintiffs' existing contractual and

7

business commercial relationships and prospective economic advantages." *Id.* ¶ 35; *see also id.*

8

¶¶ 40–128.

9

On April 26, 2024, Lewis County Superior Court denied a motion for partial summary

10

judgment in *Keller* by Plaintiffs in this case. Dkt. 95 at 4. The court determined that "there are

11

material issues of fact that remain for trial." *Id.*

12

Defendants filed a Rule 12(b)(6) motion to dismiss (Dkt. 83) and Plaintiffs filed a

13

response (Dkt. 84). The Court requested supplemental briefs "addressing (1) whether plaintiffs'

14

complaint is barred by the *Noerr-Pennington* doctrine; (2) whether this Court may consider

15

orders issued in the underlying Lewis County litigation when ruling on the motion to dismiss."

16

Dkt 92. The Ninth Circuit issued another *Noerr-Pennington* decision shortly after the parties

17

submitted their supplemental briefs. *See Relevant Grp., LLC v. Nourmand*, No. 23-55574, 2024

18

WL 4048894 (9th Cir. Sept. 5, 2024).[1]

19

The Court GRANTS the motion to dismiss because the *Noerr-Pennington* doctrine bars

20

Plaintiffs' claims. Although the Court also agrees that the Plaintiffs have failed to adequately

21

---

22

[1] In addition to their supplemental brief, Plaintiffs submitted a declaration from Steven Nikolich in which he discusses his dissatisfaction with his attorney in the Lewis County litigation. Dkt. 99. Defendants moved to strike the declaration. Dkt. 101. The Court GRANTS the motion to strike because the Court did not invite the parties to submit material beyond the supplemental briefs, and the contents of the declaration go beyond the pleadings and are not subject to judicial notice. The Court notes, however, that even if considered, the contents of the declaration would have no bearing on its ruling applying *Noerr-Pennington*.

23

24

ORDER GRANTING MOTION TO DISMISS - 3

plead the allegations of fraud and extortion supporting their RICO claims, *see* Dkt. 83 at 7–8, the Court need not address that argument in detail because the fundamental problem with Plaintiffs' complaint is that all the actions it challenges are protected speech or petitioning activity.

### III.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When a court considers the applicability of the *Noerr-Pennington* doctrine in the context of a Rule 12(b)(6) motion, it must assume the truth of the plaintiff's allegations. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009).

**B.     The Court may consider the underlying Lewis County Superior Court litigation.**

As a preliminary matter, the Court addresses whether it may consider public records from the underlying Lewis County Superior Court litigation in ruling on the motion to dismiss.

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court may take judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may judicially notice another court's opinion, but it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 689. The existence of the opinion "includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case." *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093, 1104 (D. Idaho 2022).

The Court thus takes judicial notice of the existence of the Lewis County Superior Court's summary judgment order in *Keller* and related filings in that case (Dkt. 95). *See id.* It judicially notices the stated holding and reasoning in that order but does not take the facts recited as true.

1

**C.**     **Plaintiffs' complaint is barred by the *Noerr-Pennington* doctrine.**

2

The *Noerr-Pennington* doctrine bars a party from using a federal statute to challenge

3

protected speech or petitioning activity. *See Relevant Grp.*, 2024 WL 4048894, at *5 ("The

4

*Noerr-Pennington* doctrine is a rule of statutory construction that requires courts to construe

5

statutes to avoid burdening conduct that implicates the protections of the Petition Clause of the

6

First Amendment.'" (quoting *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021))). The

7

Petition Clause protects "the right of the people . . . to petition the government for a redress of

8

grievances." *Id.* (quoting U.S. Const. amend. I).

9

"Under the *Noerr-Pennington* doctrine, those who petition any department of the

10

government for redress are generally immune from statutory liability for their petitioning

11

conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). For example, in *Noerr*, the

12

U.S. Supreme Court held that the Petition Clause protected a group of railroad companies that

13

began a publicity campaign seeking legislation favoring their industry, reasoning that

14

notwithstanding the railroads' allegedly anticompetitive motive, the publicity campaign was a

15

protected petitioning activity. *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S.

16

127, 129 (1961).

17

Although the doctrine originally arose in the context of lobbying activities that were

18

allegedly anticompetitive, the Ninth Circuit has extended its application beyond petitioning the

19

legislative or executive branches, including to lawsuits. *Sosa*, 437 F.3d at 930, 934 (holding that

20

the doctrine "overprotects baseless petitions so as to ensure citizens may enjoy the right of access

21

to the courts without fear of prosecution"). In *Sosa*, the Ninth Circuit clarified that "the *Noerr-*

22

*Pennington* doctrine stands for a generic rule of statutory construction, applicable to any

23

statutory interpretation that could implicate the rights protected by the Petition Clause." *Id.* at

24

931. The Ninth Circuit also specifically applied the doctrine to RICO challenges against

petitioning activity. *See id.* at 934 (holding *Noerr-Pennington* doctrine barred plaintiff's RICO suit against television broadcaster for prelitigation demand letters); *Relevant Grp.*, 2024 WL 4048894, at *5, 12 (holding *Noerr-Pennington* doctrine barred RICO suit against defendant for allegedly abusing processes available under state environmental statute).

When applying *Noerr-Pennington*, the Court "must give adequate 'breathing space' to the right of petition." *Sosa*, 437 F.3d at 932 (quoting *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 531 (2002)). But "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions, and statutes need not be construed to permit them." *Sosa*, 437 F.3d at 932. The Ninth Circuit "has identified three circumstances in which the sham litigation exception might apply:" (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful," *Relevant Grp.*, 2024 WL 4048894, at *6 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 54 (1993) (*PREI*)), (2) "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose," *id.* (quoting *USS–POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 810–11 (9th Cir. 1994) (*POSCO*)), and (3) "if the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy,'" *id.* (quoting *Sosa*, 437 F.3d at 938).

### 1.   PREI *exception*

To determine whether the *PREI* exception applies, Courts use a two-part test: "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). Second, the litigant must have an unlawful motive. *Relevant Grp.*, 2024

WL 4048894, at *9. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *PREI*, 508 U.S. at 50.

"[O]bjective reasonableness is measured by the existence of 'probable cause' as understood in traditional common law actions. The threshold for what constitutes probable cause is low: it requires no more than a 'reasonable belief' that there is 'some chance' 'that [a] claim may be held valid upon adjudication.'" *Relevant Grp.*, 2024 WL 4048894, at *9 (quoting *PREI*, 508 U.S. at 60, 62–63, 65).

The Court first analyzes whether the underlying Lewis County Superior Court litigation is objectively baseless. Where the underlying proceedings "are made up of public legal filings and rulings, the content of which the parties do not dispute," the Court may decide "objective baselessness as a matter of law." *Id.* (internal quotation marks and citation omitted). Defendants cite *Theme*, in which the Ninth Circuit held that pre-suit letters threatening to involve third-party companies in ongoing litigation were not objectively baseless. 546 F.3d at 1008. The panel reasoned that the settlement of the underlying litigation "suggests that the original suit was not objectively baseless" and further, that the threatened suit was "potentially meritorious." *Id.* In *Relevant Group*, the Ninth Circuit reiterated that, depending on context, the settlement of litigation can "suggest that the underlying proceedings were not objectively baseless." 2024 WL 4048894, at *10.

Here, the underlying lawsuit has already survived summary judgment. *See* Dkt. 95. Summary judgment is distinct from settlement, in that when a court allows plaintiff's claims to proceed to trial, the court determines that the case is potentially meritorious. The Lewis County Superior Court's determination that "there are material issues of fact that remain for trial," *id.* at 4, shows that the suit surpasses the low threshold for probable cause, "requiring no more than a reasonable belief that there is some chance that a claim may be held valid upon adjudication."

*Relevant Grp.*, 2024 WL 4048894, at *9 (cleaned up) ("While a winning lawsuit 'is by definition . . . not a sham,' the inverse is not true, and "a court must resist the understandable temptation to engage in post hoc reasoning by concluding" that an ultimately unsuccessful "action must have been unreasonable or without foundation."); *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (concluding defendants had probable cause in underlying district court case where they had prevailed on their summary judgment motion after court had sanctioned them for discovery misconduct); *id.* ("A recovery by the plaintiff in the original action usually is regarded as conclusive evidence of the existence of probable cause, even though it is subsequently reversed, unless it can be shown to have been obtained by fraud or other imposition upon the court." (quoting *Prosser and Keeton on the Law of Torts* 894 (W. Page Keeton ed., 5th ed. 1984))).

Based on the public filings in state court, this Court can determine as a matter of law that the Lewis County litigation is not objectively baseless. This ends the inquiry under the *PREI* exception, and the Court need not analyze Defendants' subjective motivation. *See Theme*, 546 F.3d at 1008; *Relevant Grp.*, 2024 WL 4048894, at *9.

### 2. POSCO *exception*

The *POSCO* exception is inapplicable here as Plaintiffs have not alleged that Defendants brought a series of lawsuits. *See Relevant*, 2024 WL 4048894, at *8–9 ("[N]either *California Motor Transport* nor *POSCO* supports counting each discrete litigation activity as a 'proceeding' that together can constitute a 'series of proceedings' for purposes of the *POSCO* test. . . . *POSCO* relied on a fact pattern that involved twenty-nine lawsuits.").

### 3. *Intentional misrepresentation exception*

Defendants' supplemental brief quotes extensively from caselaw on the intentional misrepresentation exception, but it fails to identify how that law applies to the facts here. *See*

Dkt. 96. The amended complaint includes allegations that Defendants brought *Keller* despite knowing the disputed property belonged to Plaintiffs. *See, e.g.,* Dkt. 52 ¶¶ 14A–14N. For example, Plaintiffs allege that "Keller and Ellson knew, and had reason to know, that the factual basis belying the initiation and maintenance of the *Keller* action was false," Dkt. 52 ¶ 14E, and that they "fraudulently mischaracterized the purported factual events of the alleged 'boat ramp' incident to serve as a strategically engineered pretextual predicate to assert the basis of the initiation of the *Keller* action." Dkt. 52 ¶ 14D.

But these allegations are conclusory and "insufficiently specific." *Kearney*, 590 F.3d at 647. When a plaintiff is seeking damages "for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Id.* (quoting *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998)). "In such cases, we employ a heightened pleading standard, and that standard 'would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as "misrepresentations" by the other party.'" *Kottle*, 146 F.3d at 1063. The Ninth Circuit has explained that "the required specifics would include such things as 'exactly what representations defendant made, or to whom; with whom defendant conspired; and what exactly its "improper and/or unlawful" methods of advocacy were.'" *Kearney*, 590 F.3d at 647 (quoting *Kottle*, 146 F.3d 1063). "[V]ague allegations of misrepresentation are therefore insufficient to overcome *Noerr-Pennington* protection." *Kottle*, 146 F.3d at 1064.

Here, as in *Kottle*, Plaintiffs have not alleged facts showing what representations Defendants made, or to whom. Their amended complaint also lacks allegations detailing *how* Plaintiffs knew the disputed property belonged to NM, LLC. Rather, Defendants appear to be "recast[ing] disputed issues from the underlying litigation," which this Court has already

concluded is not objectively baseless, "as 'misrepresentations' by the other party." *See Kottle*, 146 F.3d at 1063. The Court thus concludes that the intentional misrepresentation exception does not apply.

Because no sham litigation exception applies, the *Noerr-Pennington* doctrine bars Plaintiffs' claims arising from Defendants' litigation activities.

        *4.*      *Allegations based on communications to law enforcement*

Plaintiffs' only allegations that are not based on litigation activities are their allegations that Ellson and Keller tried to persuade law enforcement officials with the Washington Department of Fish and Wildlife to initiate administrative or criminal proceedings against Plaintiffs. *See* Dkt. 52 ¶¶ 14L, 14N. This too is protected petitioning activity, and *Noerr-Pennington* bars a RICO action predicated on these allegations. *See Sosa*, 437 F.3d at 929 (explaining that the doctrine includes "lobbying activities directed toward executive branch officials") (citing *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).

**D.**    **Leave to amend is denied.**

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." But the Court may, in its discretion, deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (cleaned up). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Id.*

The plaintiffs here have already amended their complaint once, after this Court struck their first complaint because it was indecipherable and followed a pattern in other cases of

frivolous and abusive litigation tactics for which Plaintiffs' counsel has previously been sanctioned. *See* Dkt. 49. But their amended complaint fails to plead any facts suggesting their claims are not barred by *Noerr-Pennington*. They have not sought further leave to amend, nor have they identified in their initial or supplemental brief additional facts that could conceivably save their claims. The Court finds that further amendment would be futile and would cause undue prejudice to the Defendants by needlessly prolonging litigation predicated entirely on protected First Amendment activity. *See Kottle*, 146 F.3d at 1063, 1063 n.6 (affirming dismissal where plaintiff had not met sham litigation exception to *Noerr-Pennington* and had not sought leave to amend).

## IV.   CONCLUSION

Plaintiffs' allegations are not RICO. For the reasons explained above, the Court GRANTS the motion to dismiss (Dkt. 83) and DISMISSES the amended complaint with prejudice. The Court also GRANTS Defendants' motion to strike (Dkt. 101). The Clerk is directed to enter judgment in favor of Defendants and close the case.

Dated this 27th day of September, 2024.

Tiffany M. Cartwright
United States District Judge